FRANKLIN MACVEAGH ET AL.

v.

BAILEY & HANFORD.

*Trespass—Refusal to Levy on Real Estate—Sec. II, Chap. 77, Starr & C. Ill. Stat.—Waiver—Undue Haste—Damages, Whether Excessive.*

1. In order to take advantage of Sec. II, Chap. 77, Starr & C. Ill. Stat., a debtor must furnish the officer who is about to levy upon his personal property a description of his other property liable to sale or execution. A failure so to do within a reasonable time will be considered a waiver of his rights under the statute.

2. If the levy is made with undue haste, such description may be furnished within a reasonable time thereafter.

3. All who direct, request, advise or abet an officer guilty of trespass in the execution of a writ, are joint trespassers and responsible for all the damages.

4. A person who sues out an execution and gives a bond of indemnity to the sheriff to induce him to make a sale, is within the rule. One who accepts the proceeds of the illegal act is also within the rule.

5. In an action to recover damages for improperly closing the plaintiff's place of business under an execution, the time consumed by a motion prosecuted by them to quash the levy and execution may be taken into account in the assessment of damages.

7. It is not necessary to prove malice in order to sustain a recovery for actual damages in such cases.

MacVeagh v. Bailey & Hanford.

[Opinion filed March 10, 1889.]

APPEAL from the Circuit Court of Jackson County; the Hon. OLIVER A. HARKER, Judge, presiding.

Appellees were indebted to Franklin MacVeagh & Co., of Chicago, and had executed four judgment notes, the last one maturing November 17, 1886. On November 20, 1886, John H. Hamline, as attorney for MacVeagh & Co., had judgment entered by confession by the clerk of the Circuit Court of Jackson county, Illinois, on those notes, to the amount of $1,084.84, and execution at once issued and delivered to him as such attorney. He placed the same in the hands of Leonard Kennedy, deputy sheriff of Jackson county, and telegraphed to Franklin MacVeagh & Co., at Chicago, asking them to wire J. S. Hartline, of Makanda, Illinois, to go on an indemnifying bond. That dispatch was sent and Kennedy and Hamline went to Makanda, Illinois, arriving there about two o'clock, and, going immediately to the store of J. S. Hartline, got his signature as surety on an indemnifying bond to the sheriff to indemnify him in levying on the goods of Bailey & Hanford. That bond was delivered to the deputy, who then went to the store of appellees and commenced to read the execution to Bailey, one of appellees, and while so reading it Hamline came into the store. Kennedy then demanded payment of the amount in execution, and Bailey replied he could not then pay it. Hamline then said to Bailey, if he could pay it Monday he would wait over until that day. Bailey then stated he could not pay it, whereupon Hamline said he would take a train then at the depot and return to Chicago, and started to leave the room; he reached the door, where he turned and said, " Carry out my instructions," and immediately departed.

Bailey inquired what the instructions were, and the deputy sheriff replied, "to levy on the stock of goods." Kennedy testified that such were his instructions. Bailey testified that he then said: "There is no necessity of levying on the goods and shutting up the store. We have plenty of real estate."

And he further testifies, "and I designated the lot on which the store stands, and the brick on the adjoining lot. I spoke of the cooper-shop, the residence in town and farms around there, on which there was no incumbrance." In this he is substantially sustained by his clerk, George E. Schwartz, while it is denied by Kennedy. Thereupon a levy was made on the stock of goods in the store, which levy was about three o'clock in the afternoon, and about five o'clock in the afternoon the store doors were closed and locked and the key taken by the deputy, and the store continued closed for some weeks.

There is a conflict in the evidence as to the time the levy was made, though the weight of evidence shows the levy was made about three P. M. on Saturday, November 20, 1886. On the evening of that day Hanford, one of appellees, inquired of the sheriff if he would not accept a forthcoming bond, and was informed by him that he would consult the attorneys and then reply.

The sale was advertised for December 6th, and on the 24th of November appellee presented the defendant descriptions of various real estate owned by them, with abstracts of title thereto, and requested that the levy be made thereon, which request was, by the sheriff, refused. A motion was made in vacation to quash the levy and execution, the hearing of which was deferred, and thus the sale under the execution on the day advertised was prevented. That motion to quash the execution and the levy was pending until the 5th day of January, 1887, and before it was decided appellee paid off the execution and costs, and the money was received by the appellants.

Appellees bring suit to recover damages by reason of the refusal to levy on real estate, and the levying instead on personal property, averring that the goods in the store, while under the control of the deputy sheriff, were damaged, and alleging that the credit of appellees was injured, and make in that action the appellants, Franklin MacVeagh & Company, John H. Hamline and Leonard Kennedy defendants.

A trial was had in 1888, and a verdict finding the defendant Kennedy not guilty, and the other defendants guilty, and assessing damages. On motion of defendants so found guilty

a new trial was awarded, and on a second trial the defendants, Franklin MacVeagh & Company and John H. Hamline, were found guilty and damages assessed by the jury at $600, in the Circuit Court of Jackson County. A motion for a new trial was overruled and judgment entered on verdict.

The evidence shows that at the time of this levy the appellees were owners of two or three farms in Jackson county, Illinois, and also several town lots, with the buildings thereon, in Makanda, Illinois; that their real estate was worth more than $12,000.

Messrs. GEORGE W. SMITH and HAMLINE & SCOTT, for appellants.

Bailey & Hanford, prior to the levy and after notice thereof, and after reasonable opportunity to do so, failed to turn out real estate to be levied on, and to furnish Sheriff Kennedy with a description of the same.

The statute providing that personal property shall last be levied on was early construed by our Supreme Court in Bingham v. Maxey, 15 Ill. 271.

"By this statute a defendant may insist that his personal property and the land on which he resides shall not be taken in execution until the rest of his property in the county is exhausted. This provision is made for his benefit and he may waive any right under it. It is the duty of the sheriff before he proceeds to levy an execution, whenever practicable, to notify the defendant; and it then becomes the duty of the latter, if he claims the benefit of the statute, to furnish the officer with a description of his other property liable to sale on execution. If he has notice and fails to furnish such description he must be considered as waiving his rights under the statute, and the sheriff may proceed to levy on any of his property not otherwise exempt from execution. * * * It was too late to insist upon this right after the making of the levy."

This principle was applied at an earlier day in the case of Cook v. Scott, 1 Gilm. 342, where our Supreme Court, in construing a similar statute granting to judgment debtors an

exemption of a certain amount of personal property, held that the selection must be made before the levy on such property; that it was the duty of the officer, before proceeding to levy on personal property, " to notify such defendant of his having such execution in his hands, if practicable. * * * If the defendant, being thus notified, or otherwise being apprised of the execution against him in the hands of the constable, and of the intended levy, neglect or refuse to make such selection, the officer may at once proceed to levy upon any of the property of such defendant not specifically exempt from execution that he may choose to take, and afterward proceed to sell the same regardless of any subsequent claim or demand by such defendant of such property as having been selected by him under this statute."

The case of Bingham v. Maxey, *supra*, is cited and quoted from, and the doctrine approved in the following language in People, use of, etc., v. Palmer, 46 Ill. 402.

" A sheriff, whenever practicable, should, before he levies an execution, notify the defendant, and defendant, upon such notice, if he claims the benefit of the statute which exempts his personal property from sale, must furnish the officer with a description of his other property liable to sale on execution or he will be considered to have waived his rights under the statute."

The above cases are all reviewed and approved in Wright v. Deyoe, 86 Ill. 492. We do not know of this rule having ever been qualified even in this State.

Even assuming that the levy was made before Bailey went to see Hanford, and that Bailey had not sufficient notice of the same and did not have any opportunity to furnish Kennedy with a description of the firm's property, it was his duty, under the law, in such event, to furnish the sheriff with a list of that property at the earliest opportunity. Bingham v. Maxey, 15 Ill. 291.

If he had offered to furnish Kennedy a description at five o'clock, when he came back from the country, Kennedy would have been obliged to accept it and release the levy without ever having turned the key in the door.

MacVeagh v. Bailey & Hanford.

Messrs. W. A. SCHWARTZ, and HILL & MARTIN, for appellees.

It is claimed that appellees can not avail themselves of their right, under the statute, to have personal property last taken in execution, because they did not, at the time, furnish the officer with the legal description of the property, by numbers, they desired the levy to be made on. Now, it is true, the evidence shows that no legal description, by numbers, was given to the officer, yet Bailey pointed out to him the property he desired him to levy on and asked him to make such levy. He had no opportunity to do more, and we believe he did all the law required him to do, especially in view of the fact that Kennedy told him that he could not take real estate—that he was indemnified to levy on the store. Shear v. Reynolds, 90 Ill. 238.

The right to have personal property last taken, is an absolute right given to the execution debtor for his benefit, and it is one he may invoke unless he has in some way waived it. Was there any waiver in this case ? If so, when and by whom was the right waived? Bailey insisted on a levy being made on real estate, before levy was made, at the first opportunity. The officer refused on the ground that he was instructed and indemnified to levy on the store. Houses and lots to four or five times the value of the judgment were pointed out, and still the officer refused to levy, saying he had to follow instructions. Was this a waiver ? Was it not, in substance, saying, "You need furnish no more particular description by number or otherwise; I have to levy on the store anyhow; I am indemnified and have my instructions "? Instead of a waiver on the part of the appellees, we insist it was a complete waiver and an estoppel on the part of the appellants, to now insist that a list, by legal numbers, of the real estate should have been furnished.

Wright v. Deyoe, 86 Ill. 492, and Bingham v. Maxey, 15 Ill. 291, are cited by appellants for the purpose of showing that the legal description should have been furnished the officer, and a request made to levy on the property described. Now, a close examination of these cases will show that they

proceed on the theory of a waiver all the while, and undoubt-
edly it is the law as therein announced, that had Bailey &
Hanford maintained silence, said nothing about desiring levy
made on real property, and under such circumstances a levy
had been made, they would have waived their right. And it
may be, had they failed to furnish a legal description of the
property, if asked to do so, that would be a waiver. Yet we
can not believe that the authorities cited maintain the theory
that it is necessary for execution debtors to furnish legal
descriptions when plainly told in advance, by the officer, that it
is of no use for them to do so; that he has, under his instruc-
tions, to levy on personal property anyhow. Such a doctrine
would preclude every debtor, unless he was a lawyer, from
availing himself of this right, given him under the statute.
Certainly a waiver can not be predicated upon such evidence.
A waiver, to be operative, must be supported by an agree-
ment founded upon a valuable consideration, or the act relied
on as a waiver must be such as to estop a party from insisting
on his legal rights. Ripley v. Ætna Ins. Co., 30 N. Y.
(3 Tiff.) 136–164; Merchants Mut. Ins. Co. v. Lacroix, 45
Tex. 158. Viewed in the light of the above authorities, we
do not believe that the court will say that the appellees
waived their statutory right.

Assuming, now, that it is the duty of the execution debtors
to turn out real estate and to furnish a list of the same to the
officer in order to maintain their right to have personal prop-
erty last taken, how stands the matter as to an estoppel or
waiver of the right of appellants to now insist that this should
have been done? Kennedy, the deputy sheriff, did not put
his refusal on this ground at the time the levy was made, but,
as we have seen, refused to levy because he was instructed to
levy on the store. His objection, then, was placed on an
entirely different ground, and having done what he did under
instructions of appellants, we insist that they can not now set
up a failure to furnish a list of real estate with the legal num-
bers. Wolf v. Willits, 35 Ill. 88; The People v. Admire,
39 Ill. 252.

Bailey asked the sheriff to levy on real property, pointing
it out. He refused on the ground that he was instructed .to

MacVeagh v. Bailey & Hanford.

levy on the store. This certainly relieved the execution debtors from the necessity of furnishing any further description, in order to preserve their rights.

PHILLIPS, J. By the provision of Sec. 11, Chap. 77, Starr & C. Ill. Stat., "The person in whose favor execution is issued, may elect on what property not exempt from execution he will have the same levied, provided personal property shall be last taken." Under a statute almost the same as this the Supreme Court of this State held: "This provision is made for his benefit (the execution debtor), and he may waive any right under it. It is the duty of a sheriff before he proceeds to levy an execution, whenever practicable, to notify the defendant, and it then becomes the duty of the latter, if he claims the benefit of this statute, to furnish the officer with a description of his other property liable to sale on execution. If he has notice and fails to furnish such description, he must be considered as waiving his rights under the statute, and the sheriff may proceed to levy on any of his property not otherwise exempt from execution. If a sheriff levies upon the personal property or homestead of the defendant without giving him notice of the execution, the latter may still insist upon his right to have the judgment satisfied out of his other property. But he must in such case furnish the sheriff with a list of that property at the earliest opportunity." Bingham v. Maxey, 15 Ill. 290.

While it is incumbent on the defendant in execution to give the officer having the execution a description of the property to be levied on, yet if the sheriff having the execution and the plaintiff in execution manifest a purpose and a determination to levy on personal property and exercise such haste in making the levy on personal property that time to furnish a description of real estate is not given to the defendant in execution after the notice and before the levy is made, it would not create a waiver of the right of the defendant in execution to have real estate first taken, and in such case the furnishing of a description afterward, within a reasonable time, would be sufficient. A preponderance of evidence here shows

that the levy was made within a few minutes after the notice, and almost immediately after the defendant in execution, Bailey, said, "There is no necessity of levying on the goods and shutting up our store, we have plenty of real estate," designating the lot on which the store stands, the brick on the adjoining lot, the cooper-shop and residence in town, and the farms around town. Then, under this haste in levying on the stock of goods, with a refusal to accept real estate, the descriptions and abstracts being made and tendered on the 24th of November following—from all these facts together, there accrued to appellees a right of action.

The appellants, however, insist that, inasmuch as Kennedy was, on the first trial, acquitted, and no steps taken by appellees to have a new trial awarded as to him, no action can be sustained as to appellants, the plaintiffs in that execution, and the attorney who directed the levy.

While Hamline and Kennedy both testify that there was no instruction not to levy on real estate, yet Kennedy testifies that he was instructed by Hamline, the attorney, "to levy on the goods if the execution was not paid," and the weight of proof shows such to have been the instruction to the sheriff.

Again, while going to appellees' place of business to make the levy, Hamline telegraphed Franklin MacVeagh & Co. to wire Hartline to afford Hamline any security he could, and Franklin MacVeagh & Co. wired Hartline to that effect, and Hartline, when Hamline and the deputy sheriff called at his store, made out an indemnifying bond, which was delivered to the deputy, who, thereupon, went and made the levy, and when the execution was paid off in order to have the goods released, Franklin MacVeagh & Co. received the money.

"It is a general rule that when a sheriff or constable makes himself liable as a trespasser in the execution of a writ, all who direct, request, advise, aid or abet, are joint trespassers and responsible for all the damages. If a person sue out execution and give a bond of indemnity to the sheriff to induce him to sell the goods of another, that is a sufficient interference to subject him to an action; so, also, if he adopt the acts of the sheriff by receiving the goods or money." Wolf v. Boettcher, 64 Ill. 316.

The jury had sufficient evidence to find Franklin MacVeagh & Co. and John H. Hamline guilty.

It is insisted further, however, that the verdict was excessive. The store was closed from the 20th of November to the 6th of December, provided the sale had been made without interruption by motion to quash. The motion to quash, however, was a right in appellees, and their action in assertion of that can not be regarded as an extension of the time of closing the store beyond what was necessary to effect the sale of the stock of goods under the execution; but such sale was what appellees were endeavoring to prevent and had a right so to do, and in the assertion of such right of endeavoring to have execution and levy quashed, the store was kept closed until January 15th following. The jury also has the evidence as to the manner and extent of damage to the goods and of the injury to the credit of appellees. Accordingly, we see no reason to hold that the damage assessed was excessive, but we hold that the evidence appears to have warranted the damage as assessed. It is still further insisted that there is no evidence of malice on the part of appellants. It does not appear that vindicatory damages were assessed, and to recover actual damages it is not necessary to prove motive.

We find no error in this record of which appellants can complain, and the judgment is affirmed.

*Judgment affirmed.*