92  258
105 · 372

## JOHN GRIMES v. MICHAEL H. BOWERMAN.

*Malicious prosecution of attachment—Action by individual partner —Conspiracy—Damages—Evidence.*

1. Plaintiff, who was worth $30,000, purchased the interest of one of several partners in the firm property and business, and entered into articles of copartnership with the remaining members of the old firm, which was insolvent. Defendant, who was aware of the situation, and was a creditor of the old firm, signed an agreement to take the five-year paper of the new firm in payment of his debt, which he did, as did other creditors. Some of the creditors who failed to sign the agreement began to press their claims, and plaintiff attempted to negotiate a loan on the firm property of defendant to satisfy

such claims. Defendant declined to make the loan, and it was secured from other creditors, who took mortgages on the real and personal property, and who, after deducting the amount of their claim, and paying defendant a mortgage due him, paid the remainder of the loan to one of plaintiff's copartners. Defendant was aware of all of these transactions, and his attorney delivered up the five-year note, and secured from said copartner, who was pecuniarily irresponsible, without plaintiff's knowledge, a new note, payable on demand, for the amount of the prior note, and defendant at once commenced an attachment suit to recover on the demand note, swearing in the affidavit for attachment that the new firm, and also each member, had made a fraudulent disposition of their property with intent to defraud their creditors. The attachment was levied not only upon the firm property, but upon plaintiff's individual property. Other attachments followed, and the holders of the chattel mortgage seized the firm property, and as a final result plaintiff lost heavily in his property, and his credit was injured. He brought a suit against the defendant for maliciously suing out the writ of attachment, alleging the falsity of the allegations in the affidavit, and that the giving of the demand note and bringing the attachment suit were collusive acts between plaintiff's copartner and the defendant, and that the effect was a personal and special injury to the plaintiff. The plaintiff introduced abundant testimony to establish the aforesaid facts, and recovered a verdict against the defendant of $4,500. And in affirming the judgment entered thereon the Court hold:

a—The action was properly brought in plaintiff's individual name.

b—It was competent for plaintiff to show the subsequent attachments and the foreclosure of the chattel mortgage, it being left for the jury to say whether such acts resulted from defendant's suing out his attachment.

2. The following propositions are summarized from the opinion:

a—A partnership has no such separate or ideal existence as will permit a recovery in the firm name in an action sounding in tort for a wrong committed by the defendant acting in concert with a member of the firm.

b—In a suit for maliciously suing out a writ of attachment against a firm, it is competent to show the condition of the firm business, and the assets and credit of the firm, at the time the affidavit was made, for the purpose of showing the want of probable cause for taking out the writ, and the availability of the business for the purpose of carrying, and eventually paying, the firm debts.

*c*—The measure of damages in a suit for maliciously suing out a writ of attachment is full compensation for all losses sustained, including expenses incurred in and about the suit, and injury to or destruction of business or credit.

*d*—Where a plaintiff has been injured in his person or property by the wrongful act of the defendant, the fact that a third party by his wrong contributed to the injury does not relieve the defendant from liability.

*e*—While the culpable act of a third party may have been the immediate cause of an injury, an earlier act of the defendant may have contributed so effectually to it as to be regarded as the efficient, or, at least, concurrent and responsible, cause.

Error to Ingham. (Daboll, J., presiding.) Argued February 5, 1892. Decided June 10, 1892.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Q. A. Smith (Parkinson & Day,* of counsel), for appellant, contended:

1. Partners must join in an action for injuries to the partnership property and business; citing Pars. Part. 338, 339; Gould, Pl. chap. 4, §§ 52, 56; Dicey, Parties, 405; 2 Bates, Part. § 1030 *et seq.*; 5 Wait, Act. & Def. 145, 146; *Wilson v. Wallace,* 8 Serg. & R. 53; *Pursley v. Ramsey,* 31 Ga. 403; *Tilford v. Ramsey,* 37 Mo. 563; *Haynes v. Knowles,* 36 Mich. 408; *Hutchinson v. Dubois,* 45 Id. 143; *Bigelow v. Reynolds,* 68 Id. 344; and a partnership interest is an entire interest, and partners do not hold as joint tenants or tenants in common; citing *Lumber Co. v. Covert,* 35 Mich. 254, 260.

2. Only the declarations of a co-conspirator are admissible that are made in pursuance or in furtherance of the common design, and made before the act is done or committed; citing 4 Amer. & Eng. Enc. Law, 631, 632; 1 Greenl. Ev. § 111; 3 Id. § 94; Abb. Trial Ev. 14; *Hamilton v. Smith,* 39 Mich. 222.

3. Advice of counsel upon facts fully and fairly stated so far as they are within the party's knowledge, and sought and obtained in good faith, is a complete defense to the charge of malice; citing 12 Cent. Law Jour. 457; *Stanton v. Hart,* 27 Mich. 539; *Smith v. Austin,* 49 Id. 286.

*Dolan & Durning (W. F. Atkinson,* of counsel), for plaintiff, contended:

1. The rule is that, on even slight evidence of a combination to do an illegal act, the statements of any of the parties are admissible; citing *McDowell v. Rissell*, 37 Penn. St. 164; *Peterson v. Speer*, 29 Id. 479; *Evans v. Matson*, 56 Id. 54; *Clinton v. Estes*, 20 Ark. 216; *Benham v. Cary*, 11 Wend. 83; *Crary v. Sprague*, 12 Id. 41; and a division of the profits of a fraudulent transaction is sufficient, because it is some evidence of a combination to defraud; citing *Kimmell v. Geeting*, 2 Grant, Cas. 125.

2. After a combination has been presumptively established, statements of the parties are admissible; citing 2 Stark. Ev. 26, 233; *Fur Co. v. U. S.*, 2 Pet. 364; *Page v. Parker*, 40 N. H. 47; *Lee v. Lamprey*, 43 Id. 13; *Reitenbach v. Reitenbach*, 1 Rawle, 362; *Lincoln v. Claflin*, 7 Wall. 132; *Nudd v. Burrows*, 91 U. S. 426.

3. If a third person collude with one partner to injure another, the latter may maintain an action; citing 1 Chitty, Pl. 10, 73, 90; and actions on the case may be maintained by individual partners and joint tenants for injuries to the partnership or joint property; citing *Holmes v. Sprowl*, 31 Me. 73; *Starnes v. Quin*, 6 Ga. 84; *Tripp v. Riley*, 15 Barb. 333.

McGRATH, J. This is an action for the malicious suing out of an attachment.

George G. Mead and Stanhope Fleming, as copartners, had been doing business at Williamston for a number of years. They dealt in wheat and other grains, had a grist-mill, saw-mill, and lumber yard, and had a farm of 64 acres. Stanhope Fleming died in 1876. After his death his widow and heirs seem to have retained their interest in the business, and were represented by Robert Fleming and John Fleming. In February, 1884, the firm was largely indebted to defendant and others, and Mead transferred his interest to plaintiff. The only consideration for the transfer was the agreement on the part of Grimes to save him (Mead) from liability. Plaintiff at this time had a large farm, and it is conceded he was worth at least $30,000. At the time of the transfer, and the preparation of the new articles of copartnership between Grimes and the Flemings, the defendant was present, and was conversant

with the circumstances attending the transfer. He had, with other creditors, signed an agreement to take paper at five years for his unsecured claim, which amounted to between five and six thousand dollars, and notes were accordingly executed, one to defendant for $5,675.31. The agreement was not signed by all of the creditors, and during the year that followed a number of claims against the firm had matured, and were being pressed for payment. In March, 1885, plaintiff went to defendant, and tried to negotiate a loan upon the firm property, in order to liquidate this matured indebtedness. Defendant declined, but understood subsequently that the firm was negotiating with others for this loan, and learned, finally, that Herdman, Corey & Co., of Stanton, who were also large creditors of the firm, had agreed to take mortgages upon the firm real estate and personal property for $18,550, deduct the amount due themselves, pay a mortgage amounting to $1,700 held by defendant, and Grimes & Fleming were to have the balance in cash. Plaintiff was serving upon the jury in the United States court at Detroit, but joined in the execution of the mortgages, and left them with Robert Fleming to close up the deal with Herdman, Corey & Co. On March 30, Q. A. Smith, acting as Bowerman's attorney, and Robert Fleming, went on the same train to Mason, where the deal was consumated. Smith had with him the discharge of the mortgage, and the five-year note given by Grimes & Fleming to Bowerman. Herdman, Corey & Co. deducted from the amount of the mortgage the amount due them, paid the Bowerman mortgage to Smith, and turned over to Robert Fleming the balance, amounting to $9,000. Smith surrendered to Robert Fleming the five-year note executed to Bowerman, and Fleming gave a new note payable on demand for the amount of the old note and the interest, which together amounted to

$6,159.68.  Smith telephoned for Bowerman, and, on the
31st of March, Bowerman commenced suit by attachment
against Grimes & Fleming, levying upon not only the
firm property, but also the real property of plaintiff, and
upon all of his personal property as well.  The affidavit
upon which the writ was issued set forth that the firm
had assigned, disposed of, and concealed their property
with intent to defraud their creditors, and that each of
the members had assigned, etc., with like intent.  As a
result of this attachment, some six or seven other attach-
ments were sued out, and Herdman, Corey & Co. took
possession under their chattel mortgage.  In consequence,
the credit of the firm was destroyed, the business broken
up, plaintiff's credit was impaired, and his individual
estate swallowed up in the payment of the firm
obligations.

The declaration alleges that the suing out of the writ
was malicious, and that the allegations contained in the
affidavit were false.  The case made by the plaintiff was
that the Flemings were irresponsible; that plaintiff had
been induced to take hold of the business under a promise
of indulgence, made by defendant with others; that his
purpose in giving these mortgages was a legitimate and
honest purpose, and that defendant knew why it was
done; that defendant conspired with Robert Fleming to
enable Bowerman to make the attachment and injure
plaintiff; that, at the time of the exchange of notes,
Robert Fleming had $9,000 in cash of the firm's money
in his pocket; that defendant knew that fact; that no
demand was made upon Fleming for the payment of the
note, although defendant knew that the money had been
raised for the express purpose of the payment of the
firm obligations; that the other attachments and the
taking possession by Herdman, Corey & Co. under their
mortgage were the natural results of defendant's act;

that the assets of the firm were sufficient, if plaintiff had been allowed the promised indulgence, and had been permitted to carry on the business, to enable plaintiff to have paid the firm indebtedness, but that, in consequence of defendant's act, the credit of the firm had been destroyed, so that it could be no longer used to that end, the assets of the firm had been depreciated, and the burden of the defense of these proceedings, and the payment of the debts of the firm, had been thrown upon plaintiff, and a large amount of his individual property had been absorbed, and his individual credit destroyed.

The record furnishes abundant testimony to support this contention, and plaintiff had a verdict for $4,500.

It is claimed that the injury, if any, was to the firm business and credit, and that the action should have been brought in the firm name.

Plaintiff set up that the act done was by collusion between Robert Fleming and defendant, and that the effect was a personal and special injury to plaintiff. While it is true that a partnership interest is an entire interest, yet a partnership has no such separate or ideal existence as will enable a recovery to be laid in the firm name in an action sounding in tort for a wrong committed by another acting in concert with a member of the firm; otherwise such conspiring member would profit by his own wrong. The injury in the present case was peculiar to plaintiff. He had embarked in a business in which the other partners were irresponsible. He was a man of means and credit, and was induced, by the promises of indulgence held out by defendant and other creditors, to lend his name and credit to a business that needed both. The very fact that he insisted upon an extension of time of five years for the payment of unsecured debts, and that the creditors granted that extension, explains the situation. His connection with the

firm was all that gave it vitality or credit. These facts were all well known to defendant. The destruction of that business could not but be specially injurious to plaintiff. The court confined plaintiff's recovery to the damage which he had sustained to his business, to his credit, and to his reputation for business integrity. No testimony was offered tending to show the profits of the business. The testimony introduced regarding the condition of the firm business, its assets and credit, was necessary to show the want of probable cause for taking out the writ, and the availability of that business for the purpose of carrying, and eventually paying, the firm debts, and relieving the plaintiff. The facts respecting the condition of the business when plaintiff embarked in it, all of which were known to defendant at the time of the commission of the tort complained of, were admissible, as tending to show the special injury to him. We are of opinion that, under the peculiar facts of this case, plaintiff was entitled to maintain his action, and that the evidence offered was admissible.

It is urged that error was committed in permitting plaintiff to show the subsequent attachments, and the taking possession by Herdman, Corey & Co. under their chattel mortgage.

The measure of damages in this class of cases is full compensation for all losses sustained, including expenses incurred in and about the suit, and injury to or destruction of business or credit. The wrong-doer must answer for all the injurious consequences of his tortious act which, according to the usual course of events and the general experience, are likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated. 1 Suth. Dam. 74. Every particular and phase of the injury may enter into the consideration of the jury. Id.

158. To say that, as a matter of law, the suing out, on the very next day, of a number of other attachments, was not the natural and usual result of defendant's tortious, act, and such as would naturally ensue, would be to ignore an every-day experience. Exceptions are rare, however malicious or unfounded the issue of the first writ. Where a plaintiff has been injured in his person or property by the wrongful act of defendant, the fact that a third party by his wrong contributed to the injury does not relieve the defendant from liability, and, while the culpable act of a third person may be the immediate cause of the injury, still an earlier wrongful act may have contributed so effectually to it as to be regarded as the efficient, or, at least, concurrent and responsible cause. 1 Suth. Dam. 64, 65. It was held in *Brand v. Hinchman,* 68 Mich. 590, that it was for the jury to say whether a refusal of credit was attributable to the act of the defendants. In the present case it was left for the jury to say whether the subsequent attachments resulted from defendant's act.

The case is discussed here by counsel for defendant upon the theory that there is no testimony tending to show that defendant and Robert Fleming acted in concert. We think there was evidence to go to the jury upon that question, and that no such error was committed by the circuit judge as calls for a reversal of the case.

It is next insisted that certain statements made by Fleming, one some time before the writ of attachment was issued, and one afterwards, were inadmissible,—the first for the reason that no conspiracy had been shown to exist; and the latter because a relation of what was past,—and could not bind defendant.

As already intimated, the evidence clearly tended to show that Fleming and defendant acted in concert, and

the testimony as to collusion between them was entirely independent of any statement made by Fleming. Under the authority of *Hamilton v. Smith*, 39 Mich. 222, Fleming's statement, when asked the reason why he substituted the demand note, viz., "Well, I don't owe Bowerman and Williams anything, but they are my friends; they are helping me out, and we are together to fix this thing all up. We can get it fixed up in this way by paying 10 or 15 cents outside on the dollar,"—ought to have been excluded, but we do not think that the admission of the testimony prejudiced the defendant. The plaintiff was restricted to the actual damages suffered by reason of defendant's wrongful act. The question of collusion was only important as bearing upon the plaintiff's right as an individual to maintain the action. Otherwise it was a mere incident. The court instructed the jury that malice was only to be inferred in the absence of probable cause for issuing the writ, and that, if there was probable cause, defendant must have a verdict. In *Hamilton v. Smith, supra,* the Court say: "The gist of the action is not the conspiracy, but the damage to the plaintiff by the wrongful acts of the defendants." The testimony took a wide range, but the court confined the recovery within very narrow limits, and we think the charge of the court was more favorable to defendant than the evidence warranted.

The judgment is affirmed, with costs to plaintiff.

The other Justices concurred.