[No. 539.  Decided May 8, 1893.]

SEATTLE CROCKERY · COMPANY, *Respondent*, v. JOHN HALEY AND JOHN SCHRAM, *Appellants*.

ATTACHMENT — ACTION ON BOND — LIABILITY OF SURETIES — ESTOPPEL — WRONGFUL ATTACHMENT — REASONABLE CAUSE — DAMAGES.

Where the principal on a bond is a non-resident and has no property in the state liable to attachment, the sureties on the bond cannot require the obligee, by notice in writing, to forthwith institute an action against the principal.

In an action against the sureties upon an attachment bond, the complaint does not state facts sufficient when it alleges the execution of the bond by the principals, without alleging that the sureties joined in its execution, although it may set out a copy thereof in the complaint, to which the names of the sureties are appended. (HOYT, J., dissents.)

Sureties upon an attachment bond may be liable for damages, without prior demand upon the principal, or suit against him to adjudicate the damages.

The principal and sureties giving bond for the attachment of property of a corporation are thereby estopped to deny its corporate existence.

In order for the sureties upon an attachment bond to avoid liability for actual damages, reasonable cause for the attachment must exist as a fact; credible information of facts sufficient to warrant a belief in the existence of reasonable cause tends merely to disprove malice and thereby relieve from exemplary damages.

In an action upon an attachment bond for damages for wrongful levy the plaintiff may show want of reasonable cause for the levy by proof as to the conduct of his affairs and the good faith of his transactions.

Liability upon a bond for malicious attachment accrues, if the agent whose direct act caused it to be issued was actuated by malicious motives, although without the knowledge of the principal, unless it is shown that the agent had no authority to attach, and that his act in doing so was affirmatively repudiated as soon as known by his principal.

In an action for damages for malicious attachment, injury to commercial credit is not an element of damages.

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods* ( *Charles E. Shepard,* of counsel), for appellants.

*Blaine & DeVries,* for respondent.

The opinion of the court was delivered by

STILES, J.—Cerf, Schloss & Co., of San Francisco, brought suit in the United States circuit court against the respondent for the recovery of certain money, a large part of which was not due. In aid of their suit an attachment was issued, in pursuance of which the marshal seized the entire stock of goods of the respondent, and held them during six days, until the writ was discharged on the ground that it had been improperly issued. This was an action upon the attachment bond against the sureties only,

the principals being non-residents, and not appearing, although they were nominally parties.

1. The first point to be noticed is the action of the court below in striking out two defenses based upon Code Proc., § 756, which provides that a surety may require a creditor or obligee, by notice in writing, to forthwith institute an action upon the contract. As was said above, the principals on the bond were non-residents, and it was not made to appear that they had any property in this state liable to attachment. For these reasons the statute had no application to the case. *Phillips v. Riley*, 27 Mo. 386; *Conklin v. Conklin*, 54 Ind. 289.

2. This was a joint and several statutory bond of indemnity, and the rules in such cases, as to strictness of allegation and proof were in full force. But the complaint did not allege the execution of the bond by the sureties, nor was there any proof addressed to that point. The eighth paragraph of the complaint was as follows:

"8. That at the time of filing said (attachment) affidavit and complaint, to wit, the said 17th day of January, 1891, and in compliance with the statute in such case made and provided, and as a condition upon which the said writ of attachment should issue, the defendants Rudolph Cerf and Benjamin Schloss made, executed and filed in said circuit court a bond for attachment in the words and figures following"—

And the answer admitted the facts stated to be true. A general demurrer, in which the deficiency of the eighth paragraph was pointed out, was overruled, and on the trial the court treated the case as if the fact that the complaint contained a copy of the bond in which Haley and Schram were named as sureties, and to which their names were appended, was sufficient to charge them with the execution of the instrument, and put them to an affirmative denial of that proposition. Citations by counsel for respondent on this point do not sustain him. A late one is *McLellan*

*Drydock Co. v. Farmers' Alliance Steamboat Line*, 43 La. An. 258 (9 South. Rep. 630), in which the bond was annexed to the petition, and the prayer asked judgment against the principal and the sureties *in solido*. The appearance was for all of the defendants, and the court said:

"The *defect* of the petition in not alleging specifically that Marston was indebted is cured by the annexing of the bond which was made part of the petition, and which exhibited his liability, by his answer without exception, and by the administration of proof without objection."

If the case at bar had gone through all its stages to the trial, and evidence of the execution of the bond by the sureties had been received, without objection, a different case would be presented.

In *Pefley v. Johnson*, 30 Neb. 529 (46 N. W. Rep. 710), the complaint alleged that "plaintiff entered into a contract in writing with defendant, a copy of which was attached;" and we find in every case of this kind examined some words of allegation which show execution of the instrument by the party to be charged, upon which the courts, although they do not favor that method of pleading, accept the recitals of the instrument as allegations of fact as far as they go. *Lambert v. Haskell*, 80 Cal. 611 (22 Pac. Rep. 327).

*Clement v. Hughes* (Ky.), 17 S. W. Rep. 285, was an action upon a guardian's bond, and it was there said:

"It is necessary, in an action upon a writing, to aver such acts and omissions by the defendant as entitled the plaintiff to relief; and this rule is not complied with in an action against a surety, unless the petition avers the execution of the writing by him, and the substance of his agreement."

But in that case, inasmuch as the petition averred that the guardian executed a bond *with the defendants as sureties*, and as the bond was copied into the petition, it was

20—6 WASH.

not necessary to allege further the substance of the contract for what the sureties covenanted to do was supplied by the copy. We understand that the rules of pleading go thus far in favor of exhibits, and no farther.

This holding will necessitate the reversal of the judgment, but there are other matters to be considered, in view of the new trial.

3. Appellants claim that the sureties are not liable in the first instance for the damages, but only after demand on the principal, or suit against him to adjudicate the damages, and non-payment. It is sufficient to say that the statute does not require a bond conditioned that the plaintiff will pay on demand, or will pay any judgment that may be obtained against him. Such courts as have held demand, or a judgment in a distinct action, to be prerequisite to recovery on an attachment bond, have based their rulings on their peculiar statutes. Note to *Burton v. Knapp*, 81 Am. Dec. 468; Drake on Attachments, § 166; 2 Wade on Attachments, § 298.

4. When it has been established that persons have joined in giving a bond for the attachment of property of a corporation they are not in a position to deny its corporate existence; so the alleged errors in proving the corporation in this case were immaterial.

5. The affidavit for the attachment alleged that the Seattle Crockery Company was about to dispose of its property with intent to defraud its creditors, and that it had so disposed of its property, or a portion thereof. A traverse of these allegations was followed by an order to discharge the attachment, upon oral proofs of the parties. No findings were made, but we think, in such a case, it must be taken that the adjudication was final as to the wrongfulness of the attachment. Now, if Code Proc., § 293, stood alone, it would seem that the production of the record here would have entitled the respondent to nominal damages, for, by

that section, the bond is conditioned that the plaintiff will prosecute his action without delay, will pay all costs that may be adjudged to the defendant, and all damages which he may sustain by reason of the attachment should the same be wrongfully, oppressively or maliciously sued out. Nothing is therein said about reasonable cause. But, when we come to § 295, we find that recovery upon the bond depends upon the plaintiff's showing — (1) A wrongful suing out of the attachment *and* that there was no reasonable cause to believe the ground upon which the same was issued to be true, when he may recover actual damages and attorney's fees; (2) a malicious suing out of the writ, when he may recover exemplary damages also.

This looks like a hard statute to comply with, since it involves the proof of a negative, viz., want of reasonable cause. Appellants maintain that the correct course for the respondent was to begin with the assumption that the attachment was wrongful, as appeared from the record of the circuit court, and then to proceed to show that the attaching creditors did not have information worthy of credit of facts justifying a belief in the existence of the grounds alleged in their affidavit; that is, they contend that the reasonable cause meant, is a state of mind produced in the attaching party by information which he believes to be true. But the plain reading of the statute is not that way. It does not depend upon the state of mind of anybody, but upon the true facts of the case. It is for the plaintiff in any such case, if there has been no previous adjudicaton, to lay before the jury the facts concerning his affairs sufficiently to show that as they were known, or might have been known by reasonable inquiry, there were no fraudulent transactions on his part, and none upon which the ordinary business man would naturally look with suspicion; for if one act suspiciously there may be reasonable cause to justify a belief that a fraud has been, or is about to be,

perpetrated, although no fraud be intended. But the facts and acts must exist; mere tale bearing, although believed in, will not supply their absence. Reasonable or probable cause is a different thing from the information upon which a belief in its existence may be based. To avoid liability upon the bond for actual damages the reasonable cause must exist as a fact; ' but credible information of facts sufficient to warrant a belief in the existence of reasonable cause will tend to disprove malice and thereby to relieve from exemplary damages.

In this matter we are compelled to take issue with the supreme court of Iowa, which has frequently held that the plaintiff in such a case must not only prove that no cause existed for an attachment, but also that the defendant had no reasonably credible information that such a cause existed. *Burton v. Knapp*, 14 Iowa, 196; *Vorse v. Phillips*, 37 Iowa, 428; *Dent v. Smith*, 53 Iowa, 262 (5 N. W. Rep. 143). The first named case was decided under a statute as to bonds and suits upon them, in substance like the statutes of the most of the states (Stat. Iowa, 1860); and we think the Iowa supreme court stood alone in holding that the actual damages were not recoverable when the attachment was issued without cause existing therefor. *Jerman v. Stewart*, 12 Fed. Rep. 271. The last two cases, however, were decided under a statute precisely like our own (Stat. Iowa, 1888), and the only one which is like it, in the section governing recoveries on the bond. To say that a debtor may be deprived of the use of his property, not for any fault of his own, but because his creditor believes that he has been in fault, is to make his rights depend upon a matter which the law cannot, and does not pretend to, regulate, viz., the nature and condition of the creditor's mind; and is to put him, upon the trial of his suit for damages, to proof of facts which he can get positively from no other source but the creditor himself, which

would be entirely unreasonable. Moreover, different creditors whose rights to have an attachment are equal when a cause exists, would be placed upon an entirely different footing, if the writ should be discharged for want of actual cause. When one creditor attaches, others are likely to, deeming that the affidavit of the first one on file is sufficient information to lead a prudent person to act; but in a suit for damages the first one would escape, under the Iowa rule, because he had credible information, while the second would pay the full penalty. The language of the statute is: "And that there was no reasonable cause to believe the ground . . . to be true." The "ground" in this case was that respondent had disposed of its property with intent to defraud its creditors, and that it was about to do so; but the "cause" for believing that ground to be true was not the statement of any one that there was a cause, but a fact, or facts, as, for example, a sham sale of crockery to a third person, without consideration, with the understanding that he was to hold it or sell it for the benefit of the respondent, or a plan or scheme devised for that purpose but not yet executed. This cause the law requires the plaintiff to prove to be non-existent.

It was competent, therefore, for the respondent to show — *First*, the discharge of the writ; *secondly*, the want of reasonable cause by proof as to the conduct of its affairs, and the good faith of its transactions; and, *thirdly*, under the allegations of the complaint, the malicious action of the attachment plaintiff. If, at any stage of the case before the cause was submitted to the jury, it abandoned the charge of malice, all evidence upon that subject, and upon the question of exemplary damages should have been withdrawn.

What Mr. Carson stated at the hearing in the circuit court we do not think was admissible. He was the collection clerk for the attorneys of Cerf, Schloss & Co.,

with whom some conversation was had by one of respondent's officers regarding the claim of Cerf, Schloss & Co., and it seems to be admitted that upon that interview, and his report of it to Mr. Shepard, who made the affidavit, depends the question whether Cerf, Schloss & Co. had information of any fact which tended to show them that a fraud was threatened.    It was sufficient, therefore, for respondent, after showing that no actual cause existed, to prove the interview with Carson, and stop, for, there being no cause, and, according to its version of the conversation, nothing said, to lead any one to suspect an intention to perpetrate a fraud, it must follow that the attachment was so recklessly obtained that malice could be argued therefrom.    From that point it was for the appellants either to dispute the facts in regard to the conversation, or to show that Carson had reported it in such a way as to justify a belief that fraud would be attempted if the claim were pressed, or both; but what Carson reported was only material in case the charge of malice were pressed.    Information of such a character from a trusted and confidential employé ought to relieve the principal from the charge of malice when there is no affirmative showing of it, but only a presumption from the fact that the attachment was issued without the existence of reasonable cause therefor.

6.  We hold that liability upon the bond for a malicious attachment accrues if the person whose direct act caused it to be issued was actuated by malicious motives, although the principal for whom he acted as agent knew nothing of the transaction, until it is shown that the agent had no authority to attach under any circumstances, and that the act of the agent in attaching was affirmatively repudiated as soon as knowledge of it was received.

7.  Some of the evidence in this case was received upon the theory that the respondent might prove damages for loss of business credit, which it alleged it had suffered to

the extent of $4,000. And in its charge to the jury the court, after stating to them that all question of malice was withdrawn from their consideration, instructed as follows upon the subject of damages for wrongful issuance of an attachment without reasonable cause:

"1. The court further instructs the jury that if they find for the plaintiff, that in the assessment of actual damages they can consider what, if anything, the plaintiff has suffered in its credit as a merchant."

2. A substantial repetition of the foregoing, with limitations taken, as is said, largely from the charge in *Kennedy v. Meacham*, 18 Fed. Rep. 312.

"3. The only damages recoverable in this action are the actual damages caused by the attachment, and such damages only include the current expenses of the business during the detention of the store and stock, and the loss of actual net profits, if any, during that time, besides reasonable attorney's fees, to be fixed by the court upon the proper evidence. Actual damages do not include prospective profits of the business, because they are inevitably uncertain and speculative in their nature, and depend on so many remote chances of trade and of subsequent causes."

The third charge was inconsistent with the first two, for it entirely withdrew from the jury the matter of damages to credit. But if that effect was intended by the court it was of no avail, since the jury brought in a verdict of $4,-000, more than three-fourths of which must have been allowed for injury to the respondent's credit as a merchant. We conclude that it was not the intention to take this element of credit away from the jury, however, because of the court's refusal to grant a new trial.

Respondent strenuously maintains that injury to the credit of a merchant ought to be allowed in these cases, and some authorities are cited in support of the proposition. *Kennedy v. Meacham, supra*, is the most outspoken, and

follows precedents set in Alabama. *Donnell v. Jones*, 13 Ala. 490.

In *Meyer v. Fagan* (Neb.), 51 N. W. Rep. 753, a recovery for loss of credit seems to have been allowed to stand; but the question before the supreme court of Nebraska seems to have been only whether the sum recovered was excessive. No discussion of the subject of damages to credit is in the case. About the same state of things is found in *MacVeagh v. Bailey*, 29 Ill. App. 606.

In vol. 7, Lawson's Rights, Remedies, etc., § 3549, the effect of the attachment upon credit is said to be a proper matter for consideration in assessing damages, the only authority cited being *Kennedy v. Meacham;* but in § 3551 the contrary doctrine is laid down and numerous cases are cited.

The general doctrine of the law is that remote, speculative and uncertain damages cannot be recovered for; and injury to credit must necessarily be of the most uncertain value, even when its ascertainment is guarded by the most careful instructions a court can possibly give. What mercantile character and credit are, is clearly defined in *Donnell v. Jones, supra*:

"By character, in this connection," says the court, "we mean the generally received opinion in the community respecting the solvency of the firm—the probity and punctuality with which it discharged its obligations, and the efficiency with which its affairs are managed. Credit, which is usually the result of those qualities and capacities we have named, may be defined, the ability to borrow money or obtain goods in virtue of the opinion conceived by the lender, or seller, that the party will repay."

While the issuance of an attachment may do injury to this mercantile character and credit of a debtor, it is, in that respect, not different from other judicial proceedings. If the allegations of the affidavit are in the one case libel-

ous, and tend to break down the confidence theretofore reposed in the defendant, they are no more so than would be a complaint in a suit for money obtained by alleged false pretenses. And so this kind of injury may be brought about as effectually where no property at all has been taken under the writ. The commencement of an ordinary suit upon a promissory note has fully as great a tendency to impair credit as any other proceeding, for the presumption is that a business man will take care of his notes at least, if he has any regard for his standing in the commercial world; and, if he cannot take care of them so that he has to be sued, the inference most naturally is that he is weak in resources, and, therefore, not a safe person to credit. But the note may be forged, or not due, or paid, or there may be counterclaims or good defenses so that the suit is totally unjustifiable. But does any one sue for damages to credit growing out of such proceedings? Not at all, because they are privileged, being proceedings in courts of justice. And so we think this attachment proceeding, and all allegations of fraud made therein, although they may injure the character, reputation or credit of the defendant, are in the same way privileged, and not to be recovered for. All actual damages for the physical taking of property must be compensated under the statute; and when the proceeding is instituted maliciously, exemplary damages can be allowed, at the reasonable discretion of the jury under the evidence. This court in *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45 (25 Pac. Rep. 1072), did not undertake to say that, where the statute expressly provided for them, punitive damages could not be recovered. In such cases, the rules laid down in those jurisdictions where the doctrine of punitive damages is accepted should guide the courts and juries of this state. The actual damages in this case, under the pleadings, consisted— (1) Of the costs and expenses of the motion to

discharge the attachment, including the attorney's fee paid or agreed to be paid therefor, if the same was a reasonable fee; but if a gross fee was paid or promised for the whole case in the circuit court the fee for the motion must be apportioned out of that; and the fee allowed must be no more than a reasonable fee in any event, to be determined by the court without the intervention of the jury. (2) The ascertainable profits of the business while the property was in the possession of the marshal, under a liberal construction of the evidence. (3) Rent and clerk hire during the same time. (4) Actual depreciation of the value of the goods by reason of the marshal's possession and treatment of them, not including, however, any fanciful notion of depreciation because of their having been a "bankrupt stock." (5) A reasonable attorney's fee to be fixed by the court for the prosecution of this action for damages, not including the trial already had or the appeal.

We have passed upon this case, not knowing whether the question of malice would be in it upon a re-trial or not; and the objections and exceptions to rulings upon evidence and instructions were so numerous and complicated that it was impracticable to review them singly. We believe what has been said will serve to indicate how this court regards the several matters before it.

The judgment is reversed, and a new trial granted; the respondent having leave to amend its complaint.

DUNBAR, C. J., ANDERS and SCOTT, JJ., concur.

HOYT, J. (concurring).— I think that the complaint, when fairly construed, alleged the execution of the bond by the sureties as well as the principal. As to the other questions discussed, and in the disposition of the case, I concur.