DORR CATTLE COMPANY, v. DES MOINES NATIONAL BANK, Appellant.

**Action for malicious prosecution:** DEEDS: DELIVERY: STATUTE OF 1 FRAUDS.  The delivery of a deed to an authorized agent is as effective as though delivered to the purchaser himself, and the statute of frauds does not require the agent's authority to be in writing.

**Malicious prosecution:** INSTRUCTIONS.  In an action for malicious 2 prosecution in wrongfully suing out an attachment, an instruction that if there was no indebtedness the action was without probable cause, is, in view of the record, held correct.

**Advice of counsel.**  In a suit for malicious prosecution in suing 3 out a writ of attachment, advice of counsel that a right of action existed was immaterial on the question of probable cause, where, as plaintiff contended, the advice was based on a false statement of facts, or where, according to defendant's contention, the advice given was correct.

**Wrongful attachment:** DAMAGES.  Where an attachment is sued 4 out and levied maliciously and without probable cause, the law will presume some injury to have resulted and nominal damages at least will be awarded.

**Speculative damages.**  In an action for the malicious prosecution 5 of an attachment suit, injury to character, credit or business is too remote and speculative to form an item of damages.

**Recovery of damages:** CONFLICT OF LAWS.  The right of action for 6 a malicious prosecution is generally governed by the law of the place where the wrong was committed, but the recovery of damages pertains to the remedy and is governed by the law of the place where the action is brought, unless the remedy has been created by statute with and as a part of the right.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

TUESDAY, MARCH 14, 1905.

Action for damages alleged to have resulted from the suing out and levy of a writ of attachment. Judgment was entered on a verdict for the plaintiff, from which defendant appeals.—*Reversed.*

*Chas. L. Powell* and *Read & Read,* for appellant.

*Bowen & Brockett, Clark & McLaughlin,* and *Carr, Hewett, Parker & Wright,* for appellee.

Ladd, J.—In this action the plaintiff demands damages to credit alleged to have been caused by the malicious prosecution of attachment proceedings in Cook county, Ill. It appears that the Dorr Cattle Company, incorporated in this State in 1891, had acquired 1,030 acres of land in Calhoun county, and was extensively engaged in handling and feeding cattle for the Chicago market. Large amounts of money were required in carrying on the enterprise, and it became indebted to the Des Moines National Bank for over $37,000. Of this about $30,000 was secured by a mortgage on the land, upon part of which there was a prior mortgage of $5,000. The remaining $7,000, in two notes, was unsecured. All of the indebtedness was overdue, and as early as August, 1899, Reynolds, the president of the Des Moines National Bank, had advised J. W. Dorr, the secretary and manager of the company, that the entire indebtedness must be paid within a short time. It seems to have been understood that the company's only resource for this purpose was the land, and Dorr made some effort to dispose of it, but without success. Negotiations were then begun with the view of satisfying the debt by a transfer of land to the bank. These continued until December 22d, and in the morning of December 28, 1899, the bank began suit in Cook county on one of the notes, amounting to $6,557, and caused Clay, Robinson & Co., of Chicago, to whom, as consignee, the company had shipped eight car loads of cattle the night previous, to

be attached as garnishee. The ground of suing out the writ was the nonresidence of defendant, and, as this was true, it was conceded that, unless something was owing the bank on the note, this action cannot be maintained. The determination of this question necessarily depends on whether a transfer of the land to the bank in satisfaction of the company's indebtedness had then been consummated. On this issue the evidence is in sharp conflict. Dorr testified that on December 22, 1899, Reynolds informed him that the bank would take the land at the price demanded, $45,200, and wished the deal closed; that a blank deed was then prepared at the instance of Reynolds, and an understanding had that Dorr should have it properly executed by the officers of the company, and delivered to James Watt for the bank the same evening, or the morning following; and that the deed was executed and delivered in pursuance of this understanding. Reynolds denied having ever made any offer save to take the land for the debt due the bank, and testified that nothing was ever said concerning the delivery of a deed to Watt or any one else. Each is somewhat corroborated. It is enough to say, without reviewing the evidence, that it was such that the jury might have found the facts as testified by Dorr.

But appellant insists that even under Dorr's testimony the deed was placed in Watt's hands to be delivered to the bank on the condition that it first pay him the difference between the price of the land and the debt of the company. Doubtless the jury might have so found, but the court instructed that there could be no recovery unless Dorr " gave such deed to Watt, and it was delivered accompanied with such words or acts as to show an intention on the part of Dorr to surrender dominion over the deed, and that the same should be by said Watt turned over to the defendant upon its request." Under this charge the jury must have concluded that the deed was delivered to Watt for the bank unconditionally. The testimony of Dorr was open to this construction, and this was not necessarily obviated by the

mere fact that Watt was to make computation of the amount due the bank.

It will be noticed that not only the agreement to sell, but also the evidence of the designation of a person to receive the deed, was oral, and appellant insists that both are

1. DEEDS: delivery; statute of frauds.

within the statute of frauds. This involves the assumption that the arrangement for the delivery of the deed was a part of the contract of sale. The delivery of a conveyance to an authorized agent is quite as effective as to the purchaser himself. See *Asford v. Prewilt*, 102 Ala. 264 (14 South Rep. 663); *Duncan v. Pope*, 47 Ga. 445; 11 Am. & Eng. Enc. of Law (2d Ed.) 339. And there is nothing in the statute requiring the appointment of such an agent to be in writing. The bank of necessity acted through agents, and it was competent for it to designate any one it might choose to receive the deed. Up to that point neither party was bound, for the agreement, if any, had not been reduced to writing. Nevertheless they had the right to carry it out, and to do so in their own way. The statute of frauds does not undertake to regulate the manner of executing contracts when made, nor does it have any concern with them after being executed. All that remained to be done was to so deliver the deed as to convey the land in satisfaction of the debt. Both said, according to Dorr, that delivery to Watt for the bank should have this effect. When that was done, if ever, the contract was executed. True, the deed did not bear a revenue stamp, but this, in the absence of fraud, did not affect its validity. *Harvey v. Wieland*, 115 Iowa, 564; *Mitchell v. Ins. Co.*, 32 Iowa, 421; 24 Am. & Eng. Enc. of Law, 935.

II. The court instructed the jury that, if the note had been paid in the manner before mentioned, the defendant, in suing out the writ, acted without probable cause. This

2. MALICIOUS PROSECUTION: instructions.

is conceded to be the rule in action on the bond. *Young v. Broadbent*, 23 Iowa, 549; *Porter v. Wilson*, 4 G. Greene, 314. When not on the

bond, such an inference is not necessarily to be drawn. *Smeaton v. Cole,* 120 Iowa, 368. A party may have a reasonable cause to believe another indebted to him, though on the trial it turn out otherwise. But instructions are always to be considered in connection with the facts of the case. If Reynolds and Dorr made the agreement as alleged by plaintiff, both knew that Dorr was to leave the deed with Watt for the bank, and the latter was charged with notice when it was so delivered in pursuance of contract. The bank then had actual knowledge of the facts as they then were. The question was one of veracity. If the transaction was as contended by the company, the bank had no cause for thinking anything was due it; if as testified by Reynolds, a verdict for defendant was directed. There was no middle ground, and the court rightly instructed that, if there was no indebtedness, the action was without probable cause.

III. Again, the instruction on the advice of counsel is criticised as defective in limiting the consideration of it to the issue as to whether defendant was actuated by malice,

3. ADVICE OF COUNSEL.

and in requiring all the facts to be stated to counsel. Only those of which a party had knowledge, or might have ascertained by reasonable diligence, need be disclosed. *Parker v. Parker,* 102 Iowa, 500. When liability is doubtful, or depends on a construction of law, the opinion of counsel may also be considered by a litigant in deciding whether anything is due him. Indeed, it may be the controlling consideration in his decision to institute proceedings. That such advice may be taken into consideration as bearing on the probable cause was recognized in *McAllister v. Johnson,* 108 Iowa, 43. But we do not think the advice of counsel could have had any bearing in this case. If the transaction was as plaintiff contended, the defendant did not disclose the controlling facts within its knowledge to its attorney, and his advice on a false statement was wholly immaterial. If no agreement was reached, and no deed was to be delivered, as the attorney was told, the debt was un-

impaired, and he rightly advised that the bank might procure a writ of attachment on the ground of the cattle company's nonresidence. In such event a finding for the defendant was directed by the court.

IV. The garnishee held a chattel mortgage on all the cattle shipped by the Dorr Cattle Company, and the proceeds of their sale was not enough to satisfy the debt. Appellant

**4. WRONGFUL ATTACHMENT: damages.** insists that, as the writ of attachment interfered with no property rights of plaintiff, it cannot recover. This is true where no special injury has resulted from the unlawful use of the process of the court. " The gravamen of action," as was said in *Noonan v. Orton,* 30 Wis. 356, " is whether the plaintiff has improperly been made the subject of legal process to his damage." The rule was thus laid down in *Wetmore v. Mellinger,* 64 Iowa, 741. " We think the doctrine is well established by the great preponderance of authority that no action will lie for the institution and prosecution of a civil action with malice and without probable cause, where there has been no arrest of the person or seizure of the property of defendant, and no special injury sustained, which would not necessarily result in all suits prosecuted to recover for like causes of action." See, also, *Smith v. Mich. Buggy Co.,* 175 Ill. 627 (51 N. E. Rep. 569, 67 Am. St. Rep. 242) ; *Brand v. Hinchman,* 68 Mich. 590 (36 N. W. Rep. 664, 13 Am. St. Rep. 362) ; *Eickhoff v. Fidelity & Casualty Co.,* 14 Minn. 139 (76 N. W. Rep. 1030). In any event, the writ was levied, and, if sued out maliciously, and without probable cause, the law will presume some injury to have resulted from the wrong, and award nominal damages at least.

V. The only damages allowed were such as resulted from the supposed injury to plaintiff's credit. Was this a proper element of damages to be taken into consideration ?

**5. SPECULATIVE DAMAGES.** In the early case of *Campbell v. Chamberlain,* 10 Iowa, 337, this court announced the rule that in an action on an attachment bond " injuries to credit

or character or business are too remote and speculative to be considered in an action of this kind." This rule has since prevailed in this State. *Lowenstein v. Monroe*, 55 Iowa, 82; *Mitchell v. Harcourt*, 62 Iowa, 349; *Tisdale v. Mayor*, 106 Iowa, 1. Some expressions in *Thomas v. Isett*, 1 G. Greene, 470, were disregarded in subsequent decisions. The rule is also in harmony with the weight of authority. *Crymble v. Mulvaney*, 21 Colo. 203 (40 Pac. Rep. 499); *Seattle Crockery Co. v. Haley*, 6 Wash. 302 (33 Pac. Rep. 650, 36 Am. St. Rep. 156); *Elder v. Kulner*, 97 Cal. 490 (32 Pac. Rep. 563); *Union National Bank v. Cross*, 100 Wis. 174 (75 N. W. Rep. 992); *State v. Thomas*, 19 Mo. 613 (61 Am. Dec. 580); *Holliday v. Cohen*, 34 Ark. 707; 2 Sutherland on Damages (3d Ed.) section 512. The reason uniformly given is that such damages are too remote, uncertain, and speculative for estimation. On this point the court in *Seattle Crockery Co. v. Haley, supra,* said:

While the issuance of an attachment may do injury to the mercantile character and credit of a debtor, it is, in that respect, not different from other judicial proceedings. If the allegations of the affidavit are in the one case libelous, and tend to break down the confidence theretofore reposed in the defendant, they are no more so than would be a complaint in a suit for money by alleged false pretenses. And so this kind of injury may be brought about as effectually where no property at all has been taken under the writ. The commencement of an ordinary suit upon a promissory note has full as great a tendency to impair credit as any other proceeding, for the presumption is that a business man will take care of his notes, at least, if he has any regard for his standing in the commercial world; and if he cannot take care of them, so he has to be sued, the inferences must naturally be that he is weak in resources, and therefore not a safe person to credit. But the note may be forged, or not due, or paid, or there may be counterclaims or good defenses, so that the suit is totally unjustifiable. But does any one sue for damages to credit growing out of such proceedings? Not at all, because they are privileged, being proceedings in courts of justice. And so we think this attachment proceed-

ing, and all allegations of fraud made therein, although they may injure the character, reputation, or credit of defendant, are in the same way privileged, and not to be recovered for.

A distinction has been attempted, however, by text-writers between actions on the bond and actions on the case, like this; but the decisions cited by them cannot be said to support the texts. See Lawson's Rights, Remedies and Practice, section 3549. Shinn on Attachments, section 379. The only authority cited in the former is *Kennedy v. Meacham* (C. C.) 18 Fed. 312, being the charge of a *nisi prius* court to the jury. Though an action on the case, the learned judge does not indicate that he thought the rule different in an action on an attachment bond. The same may be said of decisions cited in Shinn on Attachments. See *Donnell v. Jones,* 13 Ala. 490 (48 Am. Dec. 59); *Kauffman v. Armstrong,* 74 Tex. 65 (11 S. W. Rep. 1048); *Grimes v. Bowerman,* 92 Mich. 258 (52 N. W. Rep. 751); *Brand v. Hinchman,* 68 Mich. 590 (36 N. W. Rep. 664, 13 Am. St. Rep. 362); *Bradley v. Borin,* 53 Kan. 628 (36 Pac. Rep. 977); *Lawrence v. Hagerman,* 56 Ill. 68 (8 Am. Rep. 674); *MacFarland v. Lehman,* 38 La. Ann. 351; *Pettit v. Mercer,* 8 B. Mon. (Ky.) 51; *Meyer v. Fagan,* 34 Neb. 184 (51 N. W. Rep. 753). Indeed, the last two cases were on bonds, and all decided in *Meyer v. Fagan* was that the damages were not excessive. In *Bradley v. Borin, supra,* the question of injury to credit was not mentioned. It is difficult to understand how the matter of difference in the action, whether on the attachment bond or independent of it, can affect the remoteness or uncertainty of the damages flowing from the suing out and levy of the writ. In so far as we have discovered, none of the decisions attempt any such distinction, save *Lawrence v. Hagerman.* There the court remarked that: " The remedy on the bond would not afford complete indemnity, and would not extend the consequential damages sustained, and hence resort must be had to the common-law action on the case for malicious prosecution. If such an

action can be maintained, it necessarily follows that there are injuries flowing from wanton and malicious acts, for which the law would afford no redress." It may be that the conditions of the statutory attachment bond required in that State are so restricted that all consequential damages may not be recovered thereon. In this State the condition of the bond is that " the plaintiff will pay all damages which the defendant will sustain by reason of the wrongful suing out of the attachment." Section 3885, Code. Under section 3887, if the attachment is wrongfully sued out without probable cause, the plaintiff may recover actual damages in an action on the bond; and, if sued out maliciously, exemplary damages also. These provisions are too broad to permit of the distinction attempted in the Illinois case, and the measure of damages is necessarily the same whether the action be on the bond or on the case independent of the bond.

VI. The cause of action, however, arose in Illinois, and, as noted, a different rule prevails there. In *Lawrence v. Hagerman*, 56 Ill. 68 (8 Am. Rep. 674), though attach-

**6. RECOVERY OF DAMAGES: conflict of laws.** ment bond had been given, suit was brought independent of the bond, and recovery allowed for damages resulting to the defendant's business credit and reputation from maliciously suing out the attachment without probable cause. Appellee insists that this right to recover compensatory damages for loss of credit is a part of the cause of the action, and should be recognized by the courts of this State. Appellant argues that the measure of damages pertains to the remedy, and therefore the *lex fori* should control. It is not questioned but that, if liable under the *lex loci delicti,* the defendant ought to be held liable here. The right to sue for the tort, the liability of the perpetrator, and the defenses that he may plead are, with few exceptions, governed by the law of the place. Minor on Conflict of Laws, sections 196, 197; 22 Am. and Eng. Enc. of Law, 1378 *et seq*. It is likewise held that matters of procedure and the remedy to be applied are

to be determined by the law of the forum. Minor on Conflict of Laws, section 225; *Savary v. Savary,* 3 Iowa, 271; *Shaffer v. Balander,* 49 G. Greene, 201. But it is often difficult to discern whether a particular inquiry relates to the remedy or is a substantive right. The wrong inflicted, or the right invaded, on which the action is based, must not be confused with the redress which the law affords. For every wrong there is a remedy, says the maxim. "The principal, and for most part the only, available remedy which the law can give is an award of money, estimated as an equivalent for the damages suffered." Cooley on Torts, 64. Indeed, "every action is brought to obtain some particular result, which is termed a remedy." *Cohen v. Virginia,* 6 Wheaton (U. S.) 407 (5 L. Ed. 275). The act complained of is always to be diagnosed in the light of the law of the place where committed, and its character determined according to that law; but the particular kind of and the extent of the remedy to be applied necessarily depends on the notions of justice entertained by the forum by which it is to be administered. The rule is like that pertaining to contracts. The *lex loci* determines their validity and meaning, but when found valid, and the true interpretation ascertained, the law of the forum steps in, and declares the time, mode, and extent of the remedy. *Sherman v. Gassett,* 9 Ill. 521; *Arnold v. Potter,* 22 Iowa, 194; *Hazel v. Ry.,* 82 Iowa, 477. The wrong averred in the instant case was suing out the writ of attachment without probable cause, and with a malicious intent, and causing it to be levied. This constituted a cause of action in Illinois, precisely as it would have in Iowa. *Tallant v. Burlington Gas Light Co.,* 36 Iowa, 262; *Frantz v. Hanford,* 87 Iowa, 469; *Carraher v. Allen,* 112 Iowa, 168; *Smeaton v. Cole,* 120 Iowa, 368. "The cause of action is the right claimed or the wrong suffered by the plaintiff on the one hand, and the duty or delict of the defendant on the other; and these appear by the facts of each separate case." *Box v. Ry.,* 107 Iowa, 660. See *Van Patten v.*

*Waugh,* 122 Iowa, 302. The only injury suffered by the cattle company, if any, was in its credit, and for present purposes this may be conceded part of the cause of action. Up to this point the *lex loci* is determinative of the legal effects and incidents of what was done. Nothing is left save to administer the remedy, and under all authorities the character and extent of the remedy is governed by the law of the forum, save where the remedy has been created inferentially or directly with the right by statute and has become a part of it. See *Northern Pac. Railway v. Babcock,* 154 U. S. 190 (14 Sup. Ct. 978, 38 L. Ed. 958); Minor on Conflict of Laws, section 199; *Higgins v. Ry.,* 155 Mass, 176 (29 N. E. Rep. 534, 31 Am. St. Rep. 544); *Leonard v. Nav. Co.,* 84 N. Y. 48 (38 Am. Rep. 491); *Herrick v. Ry.,* 31 Minn. 11 (16 N. W. Rep. 413, 47 Am. Rep. 771); *Knight v. Ry.,* 108 Pa. 250 (56 Am. Rep. 200); 22 Am. & Eng. Enc. of Law, 1387. Thus, when an action was brought in New York, for causing the death of intestate in Pennsylvania, the court held that, as the amount of damages to be allowed in the latter State was not limited, no more than authorized by statute in the former could be recovered. *Woodin v. Ry.,* 126 N. Y. 10 (26 N. E. Rep. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803). In *Higgins v. Ry.,* 155 Mass. 176 (29 N. E. Rep. 534, 31 Am. St. Rep. 544), the action was based on a wrong committed in Connecticut, resulting in death, and the court assumed that in bringing suit in Massachusetts the plaintiff waived the right to recover exemplary damages not allowed there, but which would have been included had the action been tried in Connecticut. In *Evey v. Mexican Central Ry.,* 81 Fed. 294 (26 C. C. A. 407, 38 L. R. A. 387), the injury was suffered in Mexico, and, though damages peculiar to social position were allowable under the Mexican statute, they might be omitted in Texas. In one portion of the opinion the court remarked: "Our opinion in this branch of the case is that the difference in the mode of arriving at and administering the damages is

a matter which affects the remedy only." See, also, *Mexican Nat. Ry. Co. v. Jackson,* 107 Tex. 89 (33 S. W. Rep. 857, 31 L. R. A. 276, 59 Am. St. Rep. 28). Says Minor in his work on Conflict of Laws: " Occasionally some point may arise under differences between the *lex delicti* and the *lex fori* as to the elements to be taken into consideration in estimating the amount of damage. Such matters pertain to the remedy, and are to be controlled by the *lex fori,* since they do not involve any substantive right." The statement in the American notes to Dicey on Conflict of Laws that " the *lex loci delicti* determines, in effect, * * * the amount of damages that may be recovered," is not in point, for the author had in mind statutory torts, as the decisions cited clearly show.

A similar statement will be found in the third volume of Beale's Cases on Conflict of Laws, at page 521, in support of which two cases are cited: *Meyer v. Estes,* 164 Mass. 457 (41 N. E. Rep. 683, 32 L. R. A. 283), and *Louisville R. Co. v. Whitlow's Adm'r,* 19 Ky. 1931 (43 S. W. Rep. 711, 41 L. R. A. 614). The former is not in point, as the action was based on a contract to be performed in Massachusetts, the State of the forum. The latter was an action for the wrongful death of a human being in Tennessee, the right to recover for which had been created by the statutes of that State. In Kentucky, where the suit was brought, contributory negligence operates as a complete defense, while in Tennessee it is considered in mitigation of damage only when the defendant's negligence is the direct and proximate cause. The court held that contributory negligence related to the right rather than to the remedy, and, therefore, that the contributory negligence of deceased might be considered in the way of reducing the amount of damages to be allowed, rather than to defeat recovery. The opinion lends some support to the text, but is contrary to the doctrine announced by this court in *Johnson v. Ry.,* 91 Iowa, 248, declining to apply the principle of comparative negligence in a case where

the injury occurred in Illinois. The point was assumed, not decided, in *Pullman Palace Car Co. v. Lawrence,* 74 Miss. 782 (22 South. Rep. 53), and was not necessarily involved. The decisions are in conflict as to whether, in an action on a foreign judgment, interest according to the law of the State where rendered or of the forum should be allowed, but the better considered opinions sustain the view that as such interest is recoverable, not on the contract of the parties, but as damages for wrongfully retaining the money, it should be assessed according to the *lex fori. Barringer v. King,* 5 Gray, 9 ; *Clark v. Child,* 136 Mass. 344; *Shickle v. Watts,* 94 Mo. 410 (7 S. W. Rep. 274) ; *Wells F. & Co. v. Davis,* 105 N. Y. 670 (12 N. E. Rep. 42) ; *Olson v. Veazie,* 9 Wash. 481 (37 Pac. Rep. 677, 43 Am. St. Rep. 855). See, *contra, Harrison v. Harrison,* 20 Ala. 629 (56 Am. Dec. 227) ; *Thompson v. Monrow,* 2 Cal. 99 (56 Am. Dec. 318) ; *Stewart v. Spaulding,* 72 Cal. 264 (13 Pac. Rep. 661) ; *Ingram v. Drinkard,* 14 Tex. 351; *Wethrill v. Stillman,* 65 Pa. 105.

There is also some conflict with reference to the rate of interest to be allowed on a breach of contract, depending largely upon whether the law of the place of performance is construed as entering into and forming a part thereof. See note to *Gray v. Western Union Tel. Co.,* 56 L. R. A. 303 ; *Ayer v. Tilden,* 15 Gray, 178 (77 Am. Dec. 355) ; *Preston v. Walker,* 26 Iowa, 205 (96 Am. Dec. 140) ; *Burrows v. Stryker,* 47 Iowa, 477. In *Carson v. Smith,* 133 Mo. 606 (34 S. W. Rep. 855), the action was for the conversion of property in Kansas, and the court held that " where interest is allowed, not under contract, but as damages, the rate is according to the law of the place where the suit is brought." But see, apparently to the contrary, *Kiefer v. Grand Trunk R. Co.* (Sup.) 42 N. Y. Supp. 171, subsequently approved by the Court of Appeals. In *Thomas v. Western Union Tel. Co.,* 25 Tex. Civ. App. 398 (61 S. W. Rep. 501), decided by an intermediate court of Texas, the defendant delayed delivery of telegram sent to plaintiff in Arkansas. In that

State, recovery of damages for mental anguish occasioned by such delay is not allowed, and so suit therefor, and for the amount paid for the telegram, was brought in Texas. The latter was held too small in amount to confer jurisdiction, and immunity from certain damages by the law of the place where the matter arose was thought to be a substantial right which ought not to be ignored by their allowance in another State. In the course of the opinion the court says: " The damages to be allowed, if fixed or limited by such law, pertain to the right and not to the remedy "— citing cases heretofore referred to, based on statutes creating the remedy with the right. It will be observed that there are few, if any, decisions in point. Those involving the allowance of interest on overdue commercial paper are influenced largely by the doctrine of the law merchant. Those relating to the allowance of interest in actions on judgment come nearer in point, but many of these seem to have been affected somewhat by an inclination to regard judgments as in their nature akin to and assimilating contracts of the locality where rendered. The question has arisen many times in actions for wrongful death, but these are of little aid, as at common law, no recovery could be had, and hence both the right of action and the extent of recovery is of statutory enactment, and it is universally held that, where this has happened, the remedy must be regarded as a part of the substantive right. *Major v. Ry.,* 115 Iowa, 309; *Hawley v. Griffin,* 121 Iowa, 667.

In the instant case no right created by statute was asserted to have been violated. The rules of the common law alone were invoked. These obtain with equal force in Illinois, Iowa, and other States. They have been adopted, in so far as applicable, from the same common source, and must necessarily be assumed to be the same everywhere. Mistakes in interpretation may be made, but the principles of justice go on forever. Every court will determine for itself what these may be as found in the common law.

*Franklin v. Twogood,* 25 Iowa, 520; *National Bank v. Green,* 33 Iowa, 140; *Johnson v. Ry.,* 91 Iowa, 248 (59 N. W. 66); 6 Am. & Eng. Enc. of Law (2d Ed.) 283. As said in *Ruhe v. Buck,* 124 Mo. 178 (27 S. W. Rep. 412, 25 L. R. A. 178, 46 Am. Dec. 439): "The spirit of comity does not require that a nonresident shall be allowed a remedy which is, by the policy of the State law, denied to its own citizens." According to the decisions of this court, damages resulting from injury to credit are too remote, uncertain, and speculative for allowance. The Supreme Court of Illinois has held otherwise, but, with all due respect for that eminent tribunal, we have felt constrained to adhere to our former conclusion, the effect of which is to denounce the ruling of that court, allowing such damages, as erroneous and contrary to the principles of justice as administered at the common law. Shall this court stultify its notions of justice by awarding a recovery contrary to what it conceives the principles of justice require, merely because the injury occurred across our borders instead of within this State? Because the injury occurred in Illinois, are the damages any less remote, uncertain, and speculative? The decisions of neither State purport to allow damages of this character, and what are such are for the court of this State to determine. Necessarily involved in the administration of the remedy are the elements to be considered in determining what it shall be. The effects of the wrong and injury are to be ascertained, but for the sole purpose of so advising the court as to enable it to apply the balm of adequate reparation. The nature and extent of the wrong, everything relating to its essence, is one thing; the consequences which naturally flow from it quite another. The right of recovery depends on the former; the remedy to be applied, and its extent, upon the latter; and the law of the forum necessarily determines what consequences shall be taken into consideration in fixing upon the remedy, for these inhere in that to be applied. It follows that, though the law may

presume damages resulted from the injury, these in the instant case were so remote, uncertain, and speculative in character as not to permit of estimation, and nominal damages only should have been allowed.

VII.    Many others of the 485 assignments of error, covering 114 printed pages, have been argued, but in view of our conclusion it seems unnecessary to farther extend this opinion by their consideration.    The ingenuity displayed in discovering so many errors, repeating them in so many different ways and with such prolixity, ought not to pass unnoticed. But this should not be at appellee's expense, and, as all proper assignments could have been included in 14 pages, the cost of printing the remaining 100 pages will be taxed to appellant.— *Reversed.*

BISHOP, J., took no part.